**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GAETANO D'ATTORE,

                          Plaintiff,

      - v -                                                Civ. No. 9:12-CV-00009
                                                                   (LEK/RFT)

CUCHARELLA, *Correction Officer Tour 3:00PM-11:00 PM*,
DURANTE, *Correction Officer Tour 3:00 PM-11:00PM*,
MS. RABADU, *Walsh Medical Center*,

                          Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

**GAETANO D'ATTORE**
10-A-5728
Plaintiff, *Pro Se*
Upstate Correctional Facility
Box 2001
Malone, NY 12953

**HON. ERIC T. SCHNEIDERMAN**             **CATHY Y. SHEEHAN, ESQ.**
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

In this *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, Plaintiff Gaetano D'Attore alleges that his constitutional rights were violated by employees of the New York State Department of Corrections and Community Supervision ("DOCCS") during the Plaintiff's incarceration at the Walsh Regional Medical Unit located in Rome, New York. *See generally* Dkt. No. 1, Compl.

Presently before the Court is Defendants' Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 18. Plaintiff has submitted a Response. Dkt. No. 20. Some additional facts found only in the Plaintiff's Affirmation submitted in opposition to the Defendants' Motion to Dismiss have been considered for purposes of this Report and Recommendation.[1] For the reasons that follow, it is recommended that the Defendants' Motion to Dismiss be **GRANTED in part** and **DENIED in part**.

## I. SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff's Complaint is seventeen pages in length, consisting of un-numbered and disorganized paragraphs, but, when liberally construed, can be read as alleging several potential causes of action. However, as the Defendant's Motion to Dismiss addresses only four of the Plaintiff's potential claims, those are the only claims addressed herein. *See* Dkt. No. 18, Defs.' Mot. to Dismiss. Those four causes of action are: (1) excessive use of force against Defendant Cucharale;[2] (2) failure to protect against Defendant Durante; (3) failure to protect against Defendant Rabideau; and (4) verbal harassment against Defendant Durante. In addition to these four claims, the Plaintiff may have attempted to state two additional causes of action: (1) interference with legal mail against Defendant Durante and other unnamed Correction Officers at Five Points Correctional Facility located in Rommulus, New York; and (2) a First Amendment retaliation claim against

---

[1] Although Plaintiff failed to plead the full extent of the injuries he sustained from the assault in his Complaint, Plaintiff supplements this information in his Affirmation submitted in response to Defendants' Motion to Dismiss. *See* Dkt. No. 20, Pl.'s Affirm., dated June 4, 2012, at ¶ 3. For the purposes of evaluating a motion to dismiss brought against a *pro se* plaintiff, the Second Circuit has deemed facts found in a plaintiff's response to a defendant's motion to dismiss to be part of the plaintiff's complaint – even though they were not contained within the original complaint. *See Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 (2d Cir. 1998) (*per curiam*).

[2] Plaintiff's initial Complaint named the Defendants as "Cucharello" and " Rabadu." *See* Dkt. No. 1, Compl. However, the correct spelling of the Defendants' names are "Cucharale," and "Rabideau." *See* Dkt. 18-1, Defs.' Mem. of Law, at p. 2, n.1 & 2. We will therefore use the proper spellings.

Defendant Durante. However, Defendants' do not address these claims in their Motion to Dismiss, and therefore we do not reach the merits of these claims herein.[3] What follows is a summary of the facts alleged in Plaintiff's Complaint relevant to Defendants' Motion, as supplemented by Plaintiff's Affirmation, which, in accordance with the requisite standard of review, must be taken as true. *See infra* Part II.A.

On the morning of December 21, 2010, while incarcerated at Walsh, Plaintiff disobeyed an order from Correction Officer ("C.O.") Lakeley to submit his fingerprints for an upcoming court date. Compl. at p. 11.[4] Eventually, however, C.O. Lakeley[5] and another unidentified C.O. compelled Plaintiff to comply. *Id.* Later that day, Plaintiff was awoken by "someone" calling his name from outside his room. *Id.* C.O.s Cucharale and Durante entered Plaintiff's room and stood on either side of his bed. *Id.* C.O. Cucharale stated that Plaintiff was not going to be a problem and then punched Plaintiff on the right side of his jaw causing "excruciating pain." *Id.* While grinning, C.O. Durante told Plaintiff he was in their house and will follow all of their rules. *Id.* C.O. Cucharale then stated that Plaintiff should get in line like everyone else. *Id.* Then, he struck Plaintiff a second time on the right side of his face causing the Plaintiff to taste blood and feel "excruciating pain." *Id.* Then both officers smiled at one another and left the room. *Id.*

Thereafter, Plaintiff requested and received medical attention for the injuries he sustained

---

[3] Plaintiff's allegations that DOCCS employees at Walsh and Five Points interfered with and/or destroyed his legal mail and papers may have been intended to state a claim regarding violations of his First Amendment rights and/or his right to access the courts. Compl. at pp 4-5. Additionally, it is also possible that Plaintiff has attempted to state a retaliation claim regarding death threats made to him by Defendant Durante while he was incarcerated at Walsh. *See infra.* note. 7. However, Defendants have not moved to dismiss these claims, therefore, there is no need for us to address their merits.

[4] All citations to the Plaintiff's Complaint refer to the page numbers automatically assigned by the Court's Case Management/Electronic Case Files System.

[5] C.O. Lakeley is not a named Defendant in this suit.

on December 21st.[6] *Id.* at pp. 11-12. Plaintiff requested that the Doctor notify Defendant Rabideau, the Superintendent at Walsh, about the incident. *Id.* at pp. 11-12. On December 23, 2010, C.O. Durante came to the Plaintiff's room and accused him of being a "snitch" and a "baby." *Id.* at p. 12. An argument ensued at which point C.O. Durante stated that he would kill Plaintiff and if he was not careful Plaintiff would be leaving Walsh with a toe-tag on. *Id.* Fearing for his life, Plaintiff went on "hunger strike" in order to ensure a transfer out of Walsh. *Id.* Thereafter, Defendant Rabideau met with the Plaintiff, and Plaintiff relayed all of the details of the December 21st incident. *Id.* Plaintiff also demanded that he be transferred out of Walsh. *Id.* at p. 13. Approximately two weeks after arriving at Walsh Defendant Rabideau transferred Plaintiff to Five Points. *See Id.*. at pp. 6 & 13.

While incarcerated at Five Points Plaintiff received further medical treatment from "Dr. Levin," the Dentist at Five Points. Dkt. No. 20, Pl.'s Affirm., dated June 4, 2012, at ¶ 3. Plaintiff sought medical treatment from Dr. Levin for the injuries he sustained during the December 21st incident at Walsh. *Id.* Dr. Levin removed one of Plaintiff's teeth, fitted him with a mouth guard, scheduled a surgery consult, and diagnosed Plaintiff with "TMJ" or "Traumatic Mandibular Jaw." *Id*.

## II. DISCUSSION

In their Motion to Dismiss, Defendants contend that: (1) Defendants are entitled to Eleventh Amendment immunity; (2) Plaintiff has failed to state a sufficient Eighth Amendment claim against any Defendant; (3) Plaintiff's allegations of verbal abuse are not actionable; and (4) Plaintiff failed

---

[6] Plaintiff's Complaint is somewhat nebulous, and it is therefore unclear when Plaintiff requested and/or received medical care after the incident on December 21st. For our purposes, it is sufficient merely to note that actually requested medical attention after the incident.

to allege that Defendant Rabideau was personally involved in any of the alleged constitutional violations. *See generally* Defs.' Mem. of Law.

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

**B. Eleventh Amendment**

Defendants argue they are entitled to Eleventh Amendment immunity from prosecution because the Plaintiff's allegations were brought against the Defendants in their official capacities. Defs.' Mem. of Law at pp. 8-9.

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government

officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540. Accordingly, the Plaintiff may maintain the action for declaratory judgment pursuant to 42 U.S.C. § 1983 as against the individual Defendants, insofar as the Plaintiff seeks prospective relief.

Therefore, we recommend that Defendants' Motion to Dismiss based on Eleventh Amendment immunity be **DENIED** as to Plaintiff's requests for surgery and other forms of equitable relief, and **GRANTED** as to Plaintiff's claims for compensatory damages.

### C. Excessive Force Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks and citations omitted).

Regarding the objective element, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated." *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury;" thus, "the seriousness of the injury is relevant to the Eight Amendment inquiry, but does not end it." *Davidson v. Flynn*, 32 F.3d 27, 29-30 n.1 (2d Cir. 1994) (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including

> the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Hudson v. McMillian*, 503 U.S. at 7.

Defendant Cucharale argues that the excessive force claim against him should be dismissed for two reasons: (1) Plaintiff's claim is based on conclusory allegations and therefore insufficient as a matter of law; and (2) the use of force was *de minimus* and therefore did not rise to the level of a constitutional violation. *See generally* Defs.' Mem. of Law.

Defendants' first argue that the Plaintiff's allegations against Defendant Cucharale regarding the use of excessive force on December 21st are legally insufficient to state a cause of action because they are "wholly conclusory," and are merely "legal conclusions without any factual enhancement." *Id.* at p. 6. We disagree. On this claim, the Plaintiff's pleading is neither threadbare nor conclusory. Plaintiff's Complaint is a fact laden account detailing when he was attacked, by whom, the precise manner in which he was attacked, the reason for his attack, and the injuries he suffered as a result of the attack. *Compare De Ponceau v. Bruner*, 2012 WL 1030415, at *6 (N.D.N.Y. Feb. 21, 2012) (finding that a complaint which included the date, identified the assailants, and described the manner of the attack was legally sufficient to state a plausible excessive force claim), *with Smith v. Rock*, 2012 WL 929853, at *5 (N.D.N.Y. Feb. 17, 2012) (finding plaintiff failed to state a sufficient cause of action where he alleged "the names of defendants, and the date and place of the attack" but not "specifics about how he was attacked, why, or what injuries he

suffered as a result"), *and Pine v. Seally*, 2011 WL 856426, at *5 (N.D.N.Y. Feb. 4, 2011) (finding no claim for excessive use of force was stated where plaintiffs failed to allege "specific injuries incurred by any particular plaintiff and allege[d] no specific details about any particular assault by any named defendant"). Plaintiff's description of the incident is remarkably detailed:

> C.O. Cucharella, stated to me that I am not going to be a problem in here, and he punched me with his left fist, in the right side of my jaw, causing immediate, excruciating pain and my head was snapped to my left, as I looked at C.O. Durante, C.O. Durante stated with a fiendish smiling grin that this is their house, and all folllow their rules and I was to look straight ahead and up at the wall of the bathroom, and C.O. Cucharella stated to me that I will get in line like everyone else and C.O. Cucharella punched me in the right side of my face again with his left fist, again causing excruciating pain to my jaw, and face, I could taste blood spewing in my mouth.

Compl. at p. 11.

Clearly, the allegations contained in Plaintiff's Complaint do not consist entirely of threadbare legal conclusions. Rather the Complaint is sufficient on its face to allow the reader to reach the reasonable conclusion that the Plaintiff has stated a plausible claim of excessive force. It does not, as the Defendants assert, merely offer naked legal conclusions devoid of the necessary facts to support those conclusions.

In regard to the objective element, we note that Plaintiff has done more than make naked or vague allegations that he was injured as a result of the attack. Plaintiff alleged that as a result of the incident he sought medical attention and was ultimately diagnosed with, and treated for, specific and serious injuries. *See supra* Part I. The severity of the Plaintiff's injuries supports the reasonable inference that the amount of force used by Defendant Cucharale was excessive and not *de minimus* as Defendants have claimed. *See Hudson v. McMillian*, 503 U.S. at 10 ("the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes").

Moreover, even if the force used by the Defendants could properly be characterized as *de minimus,* it is equally plausible that waking a sleeping prisoner and punching him in the face twice without provocation is a *per se* violation of "contemporary standards of decency." *See Blyden v. Mancusi*, 186 F.3d at 262-63; *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (vacating judgment dismissing excessive force claim where corrections officers punched plaintiff several times "without need or provocation," causing plaintiff to seek medical attention).

Addressing the subjective element, we begin by noting the Plaintiff's allegation that he was asleep when the Defendants entered his room. This fact goes to the heart of the subjective element of Plaintiff's claim. The fact that the Plaintiff was lying in bed asleep at the time of the assault supports the reasonable inference that the Plaintiff could not have presented an imminent threat to the Defendants at the time of the attack. *See Robinson v. Rome*, 2012 WL 830407, at *6 (*plaintiff's "allegations that he was physically attacked, in the middle of the night, while sleeping, indicate[s] that there was no need to deploy any physical force and that whatever force was used was unreasonable"). Common sense therefore leads us to believe – if as we must take these facts to be true – that the Plaintiff has pled sufficient facts at this stage to support the plausible inference that the Defendants' actions were motivated by a wanton and malicious desire to inflict pain rather than a legitimate and good faith effort to restore or maintain order. *Ashcroft v. Iqbal*, 556 U.S. at 680.

A similar conclusion can be drawn under a *Scott v. Coughlin* type analysis, wherein the sleeping inmate could not have presented a reasonable threat to the Defendants, therefore there was no need for the application of force, and the amount of force used – two punches to the jaw – was plainly inappropriate. *See Scott v. Coughlin*, 344 F.3d at 291.

Therefore, we conclude that the Plaintiff has pled sufficient factual allegations to support a

cause of action for the excessive use of force against Defendant Cucharale and recommend that Defendants' Motion to Dismiss based on failure to state a claim be **DENIED.**

### D. Failure to Protect

A prison inmate has a constitutional right under the Eighth and Fourteenth Amendments to be free from the "unnecessary and wanton infliction of pain." *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir. 1991) (citation omitted). "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("Prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him." *Hendricks v. Coughlin*, 942 F.2d at 113. A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (cited in *Hendricks v. Coughlin*, 942 F.2d at 113). The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. at 836. To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998)). "[T]he official must both be aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* (emphasis added).

Defendants argue that Plaintiff's Complaint "contains no facts to form a basis that Defendant Durante was aware, or should have been aware, that Defendant Cucharale intended to attack plaintiff." Defs.' Mem. of Law at pp. 7-8. For the reasons that follow, we find that Plaintiff has offered sufficient factual allegations to support a claim for failure to protect against Defendant Durante.

Plaintiff has alleged that Defendant Durante was not only present for the entire incident, but that despite having witnessed Defendant Cucharale punch Plaintiff the first time, Defendant Durante made no effort to prevent Cucharale from punching Plaintiff a second time. Compl. at p. 11. However, between the time that Defendant Cucharale threw the first and second punch, Defendant Durante had time to tell the Plaintiff to face forward, and that Plaintiff was in their house where everyone follows their rules. *Id.* Likewise, C.O. Cucharale had time to tell Plaintiff to get in line like everyone else, before striking Plaintiff a second time. *Id.* Common sense informs us that the fact that Defendants Durante and Cucharale had enough time in between the first and second punches to make intimidating statements to Plaintiff supports a reasonable inference that Defendant Durante had a realistic opportunity to intervene.

Moreover, regardless of whether Defendant Durante knew of Defendant Cucharale's intent to harm Plaintiff when he first entered the room, it is plausible that he would have been aware that there was a substantial risk Plaintiff would suffer serious harm after he witnessed Defendant Cucharale throw the first punch. *Cf. Reeder v. Artus,* 2010 WL 3636138, at *9 (N.D.N.Y. July 27, 2010) (finding that violations of prisoners constitutional rights should have been obvious to prison guards who witnessed a shackled and defenseless prisoner being repeatedly kicked and punched by

other corrections officers).

Therefore, we recommend that Defendants' Motion to Dismiss Plaintiff's claim against Defendant Durante for failure to protect be **DENIED.**

### E. Verbal Harassment

Plaintiff alleges that Defendant Durante called him a "baby," and a "snitch," threatened to kill Plaintiff, and told him that he would be "leaving [Walsh] with a toe tag on." Compl. at p. 12. Defendants argue that, without more, allegations of verbal abuse are insufficient to support a cognizable Eighth Amendment claim. Defs.' Mem. of Law at p. 9.

A claim brought under § 1983 is "not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Aziz Zarif Shabazz v. Picco*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (noting that ordinarily, a claim for verbal harassment is not actionable under § 1983). Moreover, "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. at 474 (internal quotation marks and citations omitted) (cited in *Garrett v. Reynolds*, 2003 WL 22299359, at * 4 (N.D.N.Y. Oct. 7, 2003)). Accordingly, insulting or disrespectful comments directed toward an inmate do not rise to the level of retaliation and thus is not a constitutional violation. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (calling inmate a "rat" is not a constitutional violation).

With the exception of those threats which occurred during the December 21st incident – discussed *supra* – the remainder of Defendant Durante's threats were unaccompanied by any

*-15-*

physical acts. Thus, regardless of the contemptible nature of Defendant's threats, they do not rise to the level of a constitutional violation.[7] Therefore, we recommend that the Plaintiff's verbal harassment claim against Defendant Durante be **DISMISSED.**

### F. Defendant Rabideau

Defendants argue that Plaintiff's claims against Defendant Rabideau must fail because he failed to allege that Defendant Rabideau was personally involved in any of the alleged constitutional violations. For the reasons that follow, we agree, and recommend that Defendants' Motion to Dismiss as to Defendant Rabideau be **GRANTED.**

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.

The personal involvement of a supervisory defendant may be shown by evidence

---

[7] Although we agree with the Defendants that Plaintiff has no claim for verbal harassment under the Eighth Amendment, it is possible that Plaintiff has attempted to state a retaliation claim under the First Amendment. However, the Plaintiff has not stated, and we will not speculate, as to what constitutional right Plaintiff exercised that prompted Defendant Durante's threats.

> that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Plaintiff's Complaint, even when taken as true and construed liberally, never connects Defendant Rabideau to any of the alleged constitutional violations. By Plaintiff's own account Defendant Rabideau was not aware of the assault until after it occurred.[8] *Cf. Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("[M]ere receipt of a letter from a prisoner is insufficient to establish liability," but "an official's actions and responses arising out of a grievance may."); *see also Sims v. Griener*, 2001 WL 1142189, at *4 (S.D.N.Y. Sept. 27, 2001) (collecting cases for the proposition that the mere receipt of a prisoner's letters or complaints is insufficient to allege personal involvement). Plaintiff never alleges that Defendant Rabideau knew about, orchestrated, or sanctioned the December 21st incident. Although Plaintiff alleges that the nurses and other staff were aware of and did not approve of the guards' violent "practices," there is no allegation that Defendant Rabideau knew of or condoned the same. *See generally* Compl. Furthermore, Plaintiff admits that Defendant Rabideau transferred him out of Walsh within approximately ten days of receiving the Plaintiff's request and cannot plausibly be accused of ignoring his complaints or being deliberately indifferent to the Plaintiff's situation.

Therefore, we recommend that the Defendants' Motion to Dismiss Defendant Rabideau from

---

[8] It is immaterial that the precise time or manner in which Defendant Rabideau became aware of the December 21st incident is not clear. *See* Compl. at pp. 11-13. For our purposes, the salient fact is that Defendant Rabideau did not become aware of the incident until *after* it had already occurred. *Id.*

all claims be **GRANTED.**

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, Defendant's Motion to Dismiss (Dkt. No. 18) be **GRANTED in part and DENIED in part** as follows:

1. Plaintiff's claims against Defendant Rabideau be **DISMISSED**;

2. Plaintiff's verbal harassment claim against Defendant Durante be **DISMISSED**;

3. Defendants' Motion to Dismiss Plaintiff's excessive force claim against Defendant Cucharelle be **DENIED**;

4. Defendants' Motion to Dismiss Plaintiff's failure to protect claim against Defendant Durante be **DENIED**;

5. All claims against the Defendants in their official capacities should be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the Plaintiff by **certified mail** and upon the Defendants in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: October 3, 2012
   Albany, New York

Randolph F. Treece
U.S. Magistrate Judge